# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| KATHY HARRELL | PLAINTIFF |
| v. | CAUSE NO. 1:17CV4-LG-RHW |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, and JOHN DOES 1-5 | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER
## <u>GRANTING MOTIONS FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT are the [48] Motion for Partial Summary Judgment filed by Defendant Allstate Property and Casualty Insurance Company, and the [50] Motion for Summary Judgment filed by Plaintiff Kathy Harrell in this automobile insurance case. The motions have been fully briefed. After due consideration of the submissions, it is the Court's opinion that Allstate's affirmative defenses identified by Harrell should be dismissed. It is also clear that the tortfeasor was driving an underinsured motor vehicle under Mississippi law. Accordingly, Harrell's Motion for Summary Judgment will be granted. Additionally, the Court concludes that Allstate has shown that it is entitled to summary judgment regarding Harrell's claims of bad faith and other extra-contractual damages. Both Motions will be granted.

## I. BACKGROUND

Harrell complains about Allstate's handling of her claim for underinsured motorist benefits after she was struck from behind by Alice Arena while waiting at a stop sign. Both drivers are insured by Allstate. Harrell does not name Arena but

alleges a negligence claim against her. As against Allstate, Harrell alleges she is entitled to $50,000 in underinsured motorist benefits and Allstate is acting in bad faith by failing to pay that amount. (*Id*. at 4-7). Allstate concluded after its investigation of her claim that "Mrs. Harrell has been fully compensated for her injuries by the underlying carrier and her medical payments coverage." (2d Am. Compl. Ex. 1, ECF No. 13-1).

Harrell seeks summary judgment on two affirmative defenses asserted by Allstate, and a finding that Arena was driving an underinsured motor vehicle under Mississippi law. Allstate seeks summary judgment on the issue of its liability for bad faith, asserting that it has a reasonable basis for denying payment of benefits, and this is a pocketbook dispute not suitable for punitive or extra-contractual damages under Mississippi law.

## II. LEGAL STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing Fed. R. Civ. P. 56(a)). The "burden of production at trial ultimately rests on the nonmovant" and the movant must merely show an "absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). The nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial. *Id.* The Court must draw justifiable inferences in favor of the nonmovant, provided there is sufficient evidence to draw the inference. *State*

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). There is "no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

III. DISCUSSION

**A. Harrell's Motion For Partial Summary Judgment**

Harrell seeks summary judgment and dismissal of the fourth and fifth affirmative defenses asserted by Allstate: "each and every applicable affirmative defense," and mitigation of damages. (Allstate Answer 9, ECF No. 17). Allstate does not oppose dismissal of these affirmative defenses. (*See* Allstate Resp. 1, ECF No. 54). They will be dismissed.

Harrell also seeks summary judgment on the issue of "whether the vehicle driven by Arena was an 'Uninsured Motor Vehicle' under Mississippi law." (Harrell Mem. 8, ECF No. 51). She refers to the Mississippi statute defining an underinsured vehicle as an uninsured vehicle.[1] Harrell submits that because the uninsured coverage of her two vehicles can be stacked, she has $50,000 in coverage, which is greater than Arena's $25,000 in coverage. Harrell therefore claims she is

---

[1] c) The term "uninsured motor vehicle" shall mean:
. . .
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage.

Miss. Code Ann. § 83-11-103

entitled to UM/UIM benefits totaling $50,000.

Harrell contends that Allstate has denied that Arena was an uninsured motor vehicle in its 30(b)(6) deposition, and asks the Court to recognize that the "undisputed facts satisfy the definition of 'Uninsured Motor Vehicle' under Mississippi law." (Harrell Mem. 8, ECF No. 51). But in her reply she states that she "seeks summary judgment on whether Arena is an 'uninsured motorist' under Mississippi law, not an 'uninsured auto' under Allstate's policy." (Harrell Reply 3, ECF No. 58). It is not clear to the Court what declaration Harrell seeks, or if there is any real difference in her formulations. The statute at issue here mandates uninsured motorist coverage in insurance policies, but does not define an "uninsured motorist." Instead, it speaks in terms of uninsured vehicles. *See* Miss. Code Ann. § 83-11-101, et seq.

However, after reviewing Allstate's response and the transcript of the 30(b)(6) deposition, it appears that the parties agree that Arena's vehicle was underinsured as defined by Mississippi statute. Disagreement arose when the deponent was pressed to agree that Arena was underinsured – her $25,000 in coverage was inadequate to compensate Harrell. (*See* Harrell Mem. Ex. 1, at 25-27, ECF No. 51-1). The Allstate deponent was understandably reluctant to give the impression that Allstate agreed that Arena's liability and Harrell's injuries were such that Arena was actually underinsured. That is the ultimate issue in this case, and will be determined after Arena's liability for Harrell's damages, and the extent of those damages, are proven. Thus the Court grants summary judgment as to Harrell's

original formulation of her issue, and concludes that Arena's vehicle meets the definition of an Uninsured Motor Vehicle under Mississippi law because Arena had less UM/UIM coverage than Harrell. *See Byrd v. Hutchinson*, 876 So. 2d 1092, 1095 (Miss. Ct. App. 2004) (underinsured motorist coverage is determined solely by a comparison of the tortfeasor's liability coverage and the personal coverage carried by, or available to the injured party).

**B. Allstate's Motion for Partial Summary Judgment**

Allstate requests dismissal of the bad faith punitive damages claim and any extra-contractual damages claim, arguing that this case presents a pocketbook dispute that cannot support bad faith or punitive damages in Mississippi. Allstate argues that it has not denied Harrell's claim – it has evaluated the claim as having been fully satisfied, subject to consideration of "any additional documentation you have to review." (2d Am. Compl. Ex. 1, ECF No. 13-1). Allstate states that Harrell has "already recovered $30,000 between the tort carrier and her medical payments coverage." (Allstate Mem. 17, ECF No. 49). Allstate argues that its reasons for having evaluated the claim as it did are supported by 1) Harrell's medical records, which indicate that she had suffered from back pain for five to six months prior to the accident and reached complete recovery in January 2015, when she reported no pain to her chiropractor; and 2) the fact that impact was very minor, as Arena's vehicle was undamaged by the accident and Harrell's rear bumper was merely scratched.

Harrell responds that Allstate's bad faith is shown by evidence that it 1)

delayed for thirty days in waiving its subrogation rights after Harrell settled with Arena; 3) relied on a medical record stating that Harrell had been experiencing back since a date prior to the auto accident, because the date was "obviously a typo"; 4) failed to evaluate medical records Harrell submitted after filing this lawsuit.

*i) Bad Faith Punitive Damages*

"Mississippi law imposes on insurers 'a duty to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation,' and insurers 'may be liable for punitive damages for denying a claim in bad faith.'" *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015) (quoting *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008)). "In order to succeed on a bad faith claim, a claimant 'must show that [the insurer] denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights.'" *Id.* (quoting *Hoover v. United Servs. Auto Ass'n*, 125 So. 3d 636, 643 (Miss. 2013)). An "arguable basis" is "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Univ. Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992).

Although Harrell couches her argument in terms of denial of claim, her claim was not denied. It was paid, albeit to an extent that is unsatisfactory to her. Further, although Harrell relies on a waiver delay by Allstate to show bad faith, her claim is not for bad faith delay of payment of her insurance claim. She contends that Allstate has refused to re-evaluate its conclusion regarding the value of her

claim after she submitted additional medical records, while Allstate argues that it has considered these additional medical records, but since they follow an incident when Harrell tripped while carrying a fifty-pound bag of dog food through her house, Allstate believed the medical treatment was unrelated to the vehicle accident.

In response to Allstate's argument that this appears to be merely a pocketbook dispute about the value of her claim, Harrell argues that the Court should consider the Mississippi Supreme Court's decision in *Fonte v. Audubon Insurance Co.*, holding that "a 'pocketbook dispute' exists when parties are in agreement as to the extent of damage." 8 So. 3d 161, 168 (Miss. 2009). Harrell contends that this case presents a liability dispute, because the parties are not in agreement as to the extent of damage: Allstate has "outright denie[d] [ ] benefits" for medical treatment that was provided as a result of the accident. (Harrell Resp. Mem. 21, ECF No. 56).

As another court in this district noted,

> *Fonte* presented the typical "wind versus water" issue that often accompanies hurricane-related claims. The court noted that pocketbook disputes exist when "parties are in agreement as to the extent of damage," but then held, "[T]his is simply not the issue in our case today, because the parties do not agree on the extent of the damage subject to the Fontes' policy. The Fontes maintain that the first floor of their home incurred substantial damage from wind, while Audubon attributes all the first-floor damage to storm surge. This clearly is a liability dispute." *Id.* . . . In other words, it was not a pocketbook dispute because the parties contested coverage.

*Briggs v. State Farm Fire & Cas. Co.*, No. 3:14-CV-16-DPJ-FKB, 2016 WL 347018,

at *6 (S.D. Miss. Jan. 26, 2016).

In this case, Allstate admits coverage, but disputes whether all of the damages Harrell attributes to the accident were actually related to it; the parties agree that Harrell's claim for benefits is covered by the policy, but disagree as to the amount of the benefits. In the Court's view this is a pocketbook dispute, for which Harrell may not obtain bad faith punitive damages. *Dey*, 789 F.3d at 634; *Ladner v. Geico Indem. Co.*, No. 1:16CV197-LG-RHW, 2017 WL 812693, at *2-3 (S.D. Miss. Feb. 27, 2017); *Evangelista v. Nationwide Ins. Co.*, 726 F. Supp. 1057, 1060 (S.D. Miss. 1988) (An insurer is not rendered "guilty of bad faith denial of a claim simply because an insured believes her claim is worth more than the insurer offers."). Allstate is entitled to summary judgment on Harrell's bad faith punitive damages claim. *See Dedeaux v. State Farm Mut. Auto. Ins. Co.*, No. 1:11CV372-HSO-RHW, 2013 WL 318727, at *6 (S.D. Miss. Jan. 28, 2013) (citing *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 274 (5th Cir. 2008) (holding that if there is no claim denial, then there is no jury issue of bad faith, and dismissal of the insured's bad faith claim is appropriate)). The punitive damages claim will be dismissed.

**ii) Extra-Contractual Damages**

"Insurers who are not liable for punitive damages may nonetheless be liable for consequential or extra-contractual damages (e.g., reasonable attorney fees, court costs, and other economic losses) where their decision to deny the insured's claim is without a reasonably arguable basis but does not otherwise rise to the level of an independent tort." *Broussard*, 523 F.3d at 628 (citations and internal quotation

marks omitted). The Mississippi Supreme Court has reasoned that extra-contractual damages are available pursuant to "the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, [and that] it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment." *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss.1992).

> The Mississippi Supreme Court has explained that,
>
> Extracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim. This Court has said that the plaintiff bears a heavy burden of proving that the denial of an insurance claim was in bad faith. Moreover, [t]he plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit.

*United Servs. Auto. Ass'n (USSA) v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010) (internal quotation marks and citations omitted).

Whether an insurer has a reasonably arguable basis for denying or delaying payment of a claim is a question of law. *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 70 (5th Cir. 2014); *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992). "The initial burden placed on the insurer is low: it 'need only show that it had reasonable justifications, either in fact or in law' for its actions." *James*, 743 F.3d at 70 (quoting *Wigginton*, 964 F.2d at 492). Once an insurance

company articulates an arguable or legitimate reason for its payment denial or delay, the insured bears the burden of demonstrating that the insurer had no arguable reason. *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1097 (Miss. 1996). "The plaintiff's burden in this respect likewise exists at the summary judgment stage where the insurance company presents an adequate prima facie showing of a reasonably arguable basis for denial so as to preclude punitive damages." *Id.* at 1097 n. 1 (citation omitted).

The Court finds that Allstate has articulated a reasonably arguable basis for denying or delaying payment of Harrell's claim in the amount she has demanded. Allstate points to medical records showing that Harrell was treated conservatively by chiropractors from September 2014 until January 5, 2015, with good results. On January 5, 2015, she reported pain at 0/10 on every level, and requested that she be released from chiropractic treatment. According to her Chiropractor, Dr. Stanek:

> The patient's response to treatment was good, however the patient requested that she be dismissed on January 5, 2015. This office addressed with the patient concerns that she was not fully recovered, had not completed her strengthening and was dismissing from care too early, leading to a weakened condition long-term.
> As previously mentioned healing incompletely will lead to degeneration of the spine, and in the years to come, the trauma and improper healing will cause an accelerated spurring of the bones and increased degeneration in this area. With the structural weakness of the spine, traumatically induced, and the neurological deficits manifested, it is apparent that the patient's symptoms are going to be recurrent.
> After consultation Kathy D. Harrell was dismissed from active care on January 5, 2015.

(Harrell Resp. Ex. 10, ECF No. 55-10).

Additionally, Allstate relied on the record of Harrell's visit to the Hattiesburg Clinic on February 26, 2015. According to the notes, Harrell

> Present[ed] to clinic with complaint of lower back pain. She was in an MVA in 9/2014 and has been being treated by a Chiropractor until January. She stopped going and has been doing well. This week she lifted a 50 lb bag of dog food and tripped within her home. Now is [ ] having lower back pain. She denies radiation of pain to the lower extremities. She denies bowel or bladder incontinence. Moving increases the pain and she has been using Ice and heat for some relief. She denies other complaints.

(Harrell Resp. Ex. 11, ECF No. 55-11). Allstate argues that this record shows a break in causality; that Harrell's treatment on and after February 26, 2015 was attributable to her trip and fall rather than the vehicle accident.

Allstate also points to a medical record concerning Harrell's visit to Picayune Urgent Care about six weeks after her trip and fall, on April 12, 2015. The note states that,

> The patient presents with a chief complaint of constant (but worse at times) back [sic] pain of the back since Fri. Apr 11, 2014. It has the following quality: Spasmodic. The Patient describes the severity as mild. The patient also reports muscle pain and swelling as abnormal symptoms related to the complaint.

(Allstate Mot. Ex. 24, at 2, ECF No. 48-24). Allstate argues that since April 2014 predates the September 2014 accident, this note indicates that Harrell had back pain prior to the accident. Harrell argues in opposition that the April 11, 2014 date is an obvious error by the clinic, and Allstate cannot rely on the date when there are no medical records showing that Harrell sought treatment for back pain from April 2014 until the accident. The Court agrees that this record is

ambiguous, and it does not provide a legitimate reason for denying or delaying payment on the claim as demanded by Harrell. It is possible that Harrell told the clinic that her pain began on Friday, April 11, 2014. It is also possible that she told them her pain began on the day of her accident, as Harrell asserts, although September 11, 2014 was a Thursday, not a Friday. In any event, relying on this date alone to conclude that Harrell suffered from back pain prior to the accident is not reasonable.

Nevertheless, it is the Court's opinion that with the two uncontested medical records from Dr. Stanek and the Hattiesburg Clinic, and the evidence that the accident impact was mild, Allstate has made an adequate prima facie showing of a reasonably arguable basis for denial or delay of payment of the claim in the amount demanded by Harrell. Although she has cast doubt on the reasonableness of Allstate's belief that she had back pain prior to the accident, Harrell has failed to meet her summary judgment burden of showing that Allstate had no arguable reason for its actions. Accordingly, the claim for extra-contractual damages should be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [48] Motion for Partial Summary Judgment filed by Defendant Allstate Property and Casualty Insurance Company is **GRANTED**. Plaintiff's claims for bad faith and extra-contractual damages against Defendant are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [50] Motion for Summary Judgment filed by Plaintiff Kathy Harrell is **GRANTED** as set out

above. Defendant's fourth and fifth affirmative defenses are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 7th day of December, 2017.

<u>s/ *Louis Guirola, Jr.*</u>
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE